**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Teresa Lynn Valladares, | No. CV-23-08080-PCT-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Teresa Lynn Valladares seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under 42 U.S.C §§ 416(i), 423(d), and 1382c(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 301-2113.  Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision is affirmed.

## I.     BACKGROUND

Plaintiff was born in February 1961 (Doc. 7-3 at 158).  Plaintiff has a high school education.  (*Id.* at 123).  Her prior job history includes bank clerk and bookkeeper.  (*Id.* at 142).  Plaintiff has the following severe impairments: cervical disc disease with fusion, osteoporosis, osteoarthritis of the lumbar spine, scoliosis, coronary artery disease, and chronic obstructive pulmonary disease (COPD).  (*Id.* at 22).  Plaintiff also suffers from depression.  (*Id.* at 24; Doc. 11 at 16).

On November 29, 2019, Plaintiff applied for supplemental security income, alleging disability beginning January 1, 2013.  (Doc. 7-3 at 19).  The Administration denied Plaintiff's initial claim on August 27, 2020 and upon reconsideration on April 22, 2021.  On December 1, 2021, Plaintiff appeared with her non-attorney representatives and testified at a telephonic hearing before the ALJ.  A vocational expert also testified.  On January 11, 2022, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act.  (Doc. 7-3 at 19-34).  The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.  (*Id.* at 2).  On May 2, 2023, Plaintiff sought review by this Court.  (Doc. 1).

This is not the first time Plaintiff applied for and was denied supplemental security income.  On September 3, 2015, Plaintiff applied for disability and disability insurance benefits.  (Doc. 7-4 at 5).  She also applied for supplemental security income.  Both applications claimed disability beginning on December 3, 2013.  The Administration initially denied the claims on February 9, 2016 and, again, upon reconsideration on April 26, 2016.  On August 17, 2018, Plaintiff appeared without representation and testified at a hearing.  On September 28, 2018, the ALJ issued a decision as to the applications for disability and disability insurance benefits and the supplemental security income, stating that Plaintiff is not disabled under either sections 216(i) and 223(d) or section 1614(a)(3)(A) of the Social Security Act.  (Doc. 7-4 at 14).

## II.    STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  Claims that are not actually argued in an appellant's opening brief are not considered on appeal.  *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).  "[O]nly issues [that] are argued specifically and distinctly in a party's opening brief" are reviewed.  *Id.* (internal quotation marks omitted).  Moreover, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on

appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). The court will excuse the failure to do so only when necessary to avoid a manifest injustice. *Id.*

A court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or contains legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005)). The court considers the record as a whole, taking as relevant all evidence that a "reasonable person might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). In determining whether substantial evidence supports a decision, the court "may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.2006)). Generally, when the evidence is susceptible to more than one rational interpretation, the court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "Overall, the standard of review is 'highly deferential.'" *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).

### A.    The Five-Step Evaluation

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).[1]

---

[1] At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *See id.* At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can

At step one, the ALJ found that Plaintiff rebutted the presumption of non-disability and presented new and material evidence to support additional limitations in her residual functional capacity. (Doc. 7-3 at 22). She has not engaged in substantial gainful activity since November 29, 2019. (*Id*.). At step two, the ALJ found that Plaintiff has the following severe impairments: cervical disc disease with fusion, osteoporosis, osteoarthritis of the lumbar spine, scoliosis, coronary artery disease, chronic obstructive pulmonary disease (COPD). (*Id*.). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 27). At step four, the ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), with the following exceptions: she can occasionally climb, stoop, crouch, and crawl; she can frequently kneel; she can never reach over the left shoulder, but occasionally reach over the right shoulder; she must avoid concentrated exposure to extreme temperatures, vibration, fumes, odors, dusts, gases, and poor ventilation; and she cannot be exposed to dangerous machinery and unprotected heights. (*Id*. at 28). The ALJ further found that Plaintiff can perform past relevant work as a bank clerk and bookkeeper, which does not require the performance of work-related activities precluded by the Plaintiff's residual functional capacity. (*Id*. at 33).

**B.    Administrative Res Judicata**

Generally, administrative res judicata binds an ALJ to the findings of the earlier ALJ's opinion. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). Where the prior finding was of nondisability, the claimant may overcome the presumption of continuing nondisability by "prov[ing] changed circumstances indicating a greater disability." *Id*. (citation omitted). A "changed circumstance" includes "a change in the claimant's age category under 20 CFR 404.1563 or 416.963, an increase in the severity of the claimant's impairment(s), the alleged existence of an impairment(s) not previously considered, or a

---

perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If the plaintiff can perform any other work, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

change in the criteria for determining disability."  SSAR 97-4(9), 1997 WL 742758, at *3 (Dec. 3, 1997).  If the presumption is not overcome, the adjudicator must determine that the claimant is not disabled.  *Id*. at *1.  If the presumption is overcome, the adjudicator must adopt the prior "finding of a claimant's residual functional capacity, education, or work experience, or other finding required at a step in the sequential evaluation process for determining disability." *Id*. at *3.  However, if "there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding," the adjudicator need not accept the initial ALJ's finding.  *Id*.

Here, the ALJ found, and neither party contests, that changed circumstances justified denying the preclusive effect of the earlier ALJ's decision.  (Doc. 7-3 at 22).  Specifically, the ALJ explained that Plaintiff's change in age category and impairments in the record "not previously in evidence or considered severe in the prior decision" justified rebutting the presumption of res judicata.  (*Id.*).  Because the record contained new and material evidence, the ALJ gave "additional review of the prior decisions' findings, including [the finding of] the claimant's residual functional capacity," as required by Acquiescence Ruling 97-4(9).  (*Id.*); *see also* SSAR 97-4(9) at *3.  The Court reviews the adequacy of the ALJ's "additional review" in the analysis below.

### III.    ANALYSIS

Plaintiff contends the ALJ erred in three, primary ways.  (Doc. 11 at 1).  First, Plaintiff alleges the ALJ's finding that Plaintiff's mental impairments are non-severe is not supported by substantial evidence.  Second, Plaintiff alleges the ALJ failed to properly evaluate medical opinions regarding Plaintiff's physical impairments.  Finally, Plaintiff alleges the ALJ failed to properly evaluate Plaintiff's testimony.  Each allegation is addressed below, in turn.

**A.      The ALJ's Step-Two Finding That Plaintiff's Mental Impairments Are Non-Severe Is Supported by Substantial Evidence.**

At step two in the five-step process for evaluating disability claims, the ALJ evaluates whether the claimant has a medically severe impairment or combination of impairments which "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(a)(4)(ii), § 404.1520(c).  "The 'ability to do basic work activities' is defined as 'the abilities and aptitudes necessary to do most jobs.'"  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 20. C.F.R. § 404.1521(b)).  "An impairment is not severe if it is merely a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities."  *Id.* (internal quotations omitted).  However, "[s]tep two is merely a threshold determination meant to screen out weak claims . . . [and] is not meant to identify the impairments that should be taken into account when determining the RFC."  *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).  In fact, ALJs must consider limitations and restrictions imposed by both severe and non-severe impairments when assessing a claimant's RFC.  *Id.* at 1049.

**1.      Substantial Evidence Supports the ALJ's Finding of Non-Severity.**

ALJs are required to adhere to a specific analysis in determining the severity  of mental impairments.  20 C.F.R. § 404.1520(a).  First, the ALJ must determine whether the claimant has a medically determinable mental impairment.  *Id.* at § 404.1520(b)(1).  In this case, the ALJ found that Plaintiff's medically determinable impairments include depressive disorder.  (Doc. 7-3 at 23).  Second, ALJs must then determine the "degree of functional limitation resulting from the impairment(s)."  20 C.F.R. § 404.1520(b)(2).  To determine the degree of functional limitation based on a mental impairment, ALJs rate the claimant's degree of limitation in "four broad functional areas" regarding the claimant's ability to do the following: "[1] understand, remember, or apply information; [2] interact with others; [3] concentrate, persist, or maintain pace; and [4] adapt or manage oneself."  *Id.* at § 404.1520(c)(3).  Based on the ALJ's rating within each functional limitation, the ALJ

decides the severity of the mental impairment.  *Id.* at §404.1520(d).  Here, the ALJ found Plaintiff had either "none" or "mild" limitations within each of the functional areas and thus concluded Plaintiff's mental impairments were not severe.  (Doc. 7-3 at 26-27).

Plaintiff contends that the ALJ's finding is not supported by substantial evidence. (Doc. 11 at 1).  Plaintiff specifically alleges the ALJ "ignore[ed] extensive evidence related to [Plaintiff's] depression and anxiety."  (Doc. 11 at 17).  As required by the Ninth Circuit, however, the ALJ properly documented her "findings and conclusions based on the [psychiatric review] technic," including her "specific finding as to the degree of limitation in each of the functional areas."  *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011).  If the "ALJ ha[s] substantial evidence to find that the medical evidence clearly established that [claimant] did not have a severe mental impairment," this Court must affirm.  *Davenport v. Colvin*, 608 Fed.App'x. 480, 481 (9th Cir. 2015) (citing *Webb v. Barnhart*, 433 F.3d 683 (9th Cir. 2005)).

First, the ALJ looked at medical evidence to determine the severity of Plaintiff's depressive disorder.  (Doc. 7-3 at 24).  The ALJ accurately noted that Plaintiff had taken trazodone and sertraline for depression and sleep throughout the period at issue and was considered stable on those medications.  *Id.*; (Doc. 7-10 at 130, 111, 76, 79).  The ALJ also correctly noted that, while Plaintiff experienced increasing anxiety in 2020, her doctor adjusted her medication, after which she reported feeling "much better."  (Doc. 7-3 at 24; Doc 7-10 at 83, 76, 79).  Finally, the ALJ reviewed depression screening across appointments, including appointments in December 2019, August 2020, and August and September 2021, and correctly found the screenings were negative.  (Doc. 7-3 at 24; Doc. 7-10 at 76, 71; Doc. 8-1 at 6; Doc. 8-2 at 31).  In fact, the depression screening from September 2021 reflects that Plaintiff checked "not at all" when asked if she had little interest or pleasure in activities or if she felt down, depressed, or hopeless.  (Doc. 8-2 at 31).  Plaintiff does not contest these findings.

Second, the ALJ considered the results of two consultative examinations by Charles House, Ph.D., in March 2020, and by Rick Webster, Psy.D., in March 2021.  (Doc. 7-3 at 24-25).  The ALJ did not find Dr. Webster's opinion about Plaintiff's functional limitations

entirely persuasive.  (Doc. 7-3 at 24-26).  Plaintiff scored a near-perfect score on the Mini Mental State Exam (MMSE) which indicates average intellect.   Plaintiff further stated that her depression did not stop her from doing anything.  (*Id.* at 26; Doc. 7-9 at 38, 34).  The ALJ acknowledged that Dr. House suggested that Plaintiff is best suited for relatively low stress jobs where the duties change infrequently.  (Doc. 7-3 at 26; Doc. 7-9 at 40).  However, Dr. House did not provide support for such limitations, most of which were "couched in possibility, in that she 'may' have these difficulties or 'may' do better given various limitations."  (Doc. 7-3 at 26; Doc. 7-9 at 40-41).

The ALJ also considered the medical opinion of Dr. Webster to be persuasive in determining the severity of Plaintiff's depressive disorder.  (Doc. 7-3 at 26).  Specifically, Plaintiff earned a perfect score on the MMSE, he noted Plaintiff's antidepressant medications were helping her symptoms, and he concluded that Plaintiff's mental health did not clinically impair her activities of daily living.  (Doc. 7-3 at 25-26; Doc. 8 at 3-4, 6). Further, according to Dr. Webster, Plaintiff was not experiencing cognitive impairment, issues with attention and focus, problems in social interactions, or an inability to adapt to situations.  (Doc. 7-3 at 25; Doc. 8 at 6).

Finally, the ALJ chose not to take into consideration the medical opinion evidence of Christina N. Ryser, Ph.D., dated February 28, 2022, and instead considered the prior administrative medical findings regarding claimant's psychological symptoms pursuant to AR 97-4(9).  (Doc. 7-3 at 25, 3).  Specifically, the ALJ referenced the prior administrative finding that "claimant's psychological symptoms caused no more than minimal impact to her functioning."  (*Id.*).  She further noted that the prior administrative finding regarding Plaintiff's functioning was "generally consistent with the nonsevere mental finding in the prior decision," which the ALJ adopted due to the lack of new and material evidence suggesting otherwise.  (*Id.*).

If the "ALJ ha[s] substantial evidence to find that the medical evidence clearly established that [claimant] did not have a severe mental impairment," the Court must affirm.  *Davenport*, 608 Fed.App'x. at 481 (9th Cir. 2015).  Here, the ALJ relied on "substantial evidence" in determining that Plaintiff's depressive disorder was non-severe.

*See id.*  The ALJ properly assessed the four broad functional areas, based on Plaintiff's medical records, the two consultative examinations, and the prior administrative medical findings addressed above.  (*Id.* at 25-26)  She concluded that Plaintiff has a mild limitation in understanding, remembering, or applying information; no limitation interacting with others; a mild limitation concentrating, persisting, or maintaining pace; and a mild limitation adapting or managing oneself.  (Doc 7-3 at 26-27)  Per the statutory guidelines, "[b]ecause the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the [Plaintiff's] ability to do basic work activities," Plaintiff's depressive disorder was "nonsevere."  (Doc. 7-3 at 27)  The ALJ did not err in so determining.

### 2.    The ALJ Did Not Err in Weighing the Opinion Evidence of Dr. House.

Plaintiff next makes two objections to the weighing of Dr. House's opinion evidence.  First, Plaintiff argues that the "ALJ failed to state how persuasive she found [Dr. House's] opinions," as is required by statute.  (Doc. 11 at 17)  Second, Plaintiff argues that the "ALJ did not consider that Dr. House provided support for his opinions."  (*Id*. at 18)  Neither objection is persuasive.

In considering medical opinions or prior administrative medical findings, the ALJ will consider the following factors: supportability, consistency, relationship between provider and claimant, specialization, and other factors.  20 C.F.R. § 404.1520c(a), (c).  Of these factors, supportability and consistency are the most important.  *Id.* § 404.1520c(a), (b)(2).   The ALJ is required to "articulate how persuasive [she] finds all of the medical opinions from each doctor or other source . . . and explain how [she] considered the supportability and consistency factors in reaching these findings."  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (internal quotations omitted).  Even where evidence is susceptible to more than one rational interpretation, the Court must affirm if the ALJ's evaluation is "supported by inferences reasonably drawn from the record."  *Molina*, 674 F.3d at 1111.

In weighing the opinion evidence of Dr. House, the ALJ wrote that Dr. House's report and medical opinion is "largely consistent" with the medical opinion from Dr. Webster and the prior administrative medical findings.  (Doc. 7-3 at 26).  As evidence consistent with the record, the ALJ pointed to Dr. House's observation of a near-perfect MMSE and "note[] that [Plaintiff] reported both an effective medication regimen and that depression was not stopping her from doing anything".  (*Id*.).  Although the ALJ found that Dr. House's report and medical opinion were consistent with the record, she found his conclusions regarding Plaintiff's possible functional limitations—that low stress jobs with consistent duties and limited interaction with the public are better for Plaintiff—were inconsistent with the record.  (*Id*.).

Plaintiff alleges that, in fact, "the abnormalities identified as a basis for the opinions from Dr. House are wholly consistent with the record."  (Doc. 11 at 20).  As support for this proposition, Plaintiff points to four "office/clinic notes."  These four notes mention Plaintiff's depression but only to state that it's being treated: Plaintiff is "doing better with Zoloft of 150 mg daily" (Doc. 7-9 at 106); "[p]atient is on Sertraline [and] [s]he states it is working but she still has her moments" (Doc. 7-9 at 149); "[m]arked improvement since increasing Sertraline" (Doc. 7-9 at 259); "[f]or depression anxiety she states that increasing sertraline to 150 mg daily helped her a lot and she is not anxious anymore . . . [s]he feels much better" (Doc. 7-10 at 27).  If anything, Plaintiff's citations support the ALJ's conclusion that Dr. House's medical observations—that Plaintiff's depression does not stop her from doing anything—are, in fact, consistent with the record.  Plaintiff fails to point to evidence that Dr. House's conclusions about Plaintiff's functional limitations are consistent with the medical record.

Regarding supportability, the ALJ explained that she found Dr. House's conclusions regarding Plaintiff's possible functional limitations to be less persuasive due to lack of "adequate support."  (Doc. 7-3 at 26).  Given that Dr. House's medical opinions were both unremarkable and consistent with the broader record, the ALJ accurately found Dr. House did not point to any evidence in his own evaluation to "support [] the finding that these possible limitations are the most the claimant can do, or that she has moderate or greater

impairment in any of the functional criteria." (*Id.*). Plaintiff points to Dr. House's examination notes about "some avoidance of eye contact, mild situational anxiety, and [observation that] she seemed mild to moderately dysphoric and unhappy" as support for Dr. House's functional limitation opinions. (Doc. 11 at 18). However, these were observations made by Dr. House regarding her mood at the start of the interview, not medical findings. (Doc. 7-9 at 38) ("The claimant may have been experiencing some mild situational anxiety at the beginning of the evaluation, due to her arriving 30 minutes late, after going to the wrong address . . . [and] Ms. Valladares seemed to be mild to perhaps moderately dysphoric during the interview."). Because the ALJ provided substantial evidence to support her findings regarding the consistency and supportability of Dr. House's medical opinions, there is no error here.

### 3. The Appeals Council Did Not Err in Declining to Review the Opinion Evidence of Dr. Ryser.

Plaintiff next argues that the Appeals Council was required to consider the opinions of Dr. Christina N. Ryser, Ph.D., in determining whether plaintiff's depressive disorder was severe. (Doc. 11 at 21). Plaintiff submitted the psychological impairment questionnaire and psychological evaluation report from Dr. Ryser as new evidence to the Appeals Council for review, after the initial ALJ determination. (Doc. 7-3 at 3). The Appeals Council correctly determined that the "evidence does not relate to the period at issue" and therefore "does not affect the disability determination." (*Id.* at 3).

Claimants are permitted to "submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012) (citing 20 C.F.R. § 404.970(b)). Medical evaluations made after the relevant time period—here, the date of the ALJ's decision—are relevant if they concern the claimant's conditions during that time period. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) (holding "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition").

The Ninth Circuit's holding in *Taylor* does not apply here.  In *Taylor*, the Appeals Council improperly rejected a 2006 psychiatric evaluation because it believed the medical views reflected the doctor's views after the disability insurance coverage expired in 2004. *Id*.  However, even though the evaluation occurred after the coverage expired, over the relevant five years, that same doctor twice evaluated the claimant, supervised the licensed nurse practitioner who treated the claimant, and approved prescriptions for the claimant's medications.  *Id*.  The court thus found the doctor's opinion reflected the claimant's mental impairments and limitations before the expiration of his insured status and "its rejection was improper."  *Id*.

Unlike in *Taylor*, Dr. Ryser had no relationship with the Plaintiff before the February 28, 2022 evaluation that post-dated the ALJ's decision.  (Doc. 7-3 at 103).  Dr. Ryser, herself, noted that the only time she had seen Plaintiff was "once, for [the] one-time evaluation."  (*Id*.).  Plaintiff asserts that Dr. Ryser "explicitly stated that the symptoms and limitations . . . were present since December 2013," thus making the evidence relevant to the period at issue.  (Doc. 11 at 21).  However, Dr. Ryser's questionnaire and evaluation report were based on her meeting with Plaintiff, after the ALJ's decision, and was not informed by a relationship with Plaintiff that existed during the relevant time period, as was the case in *Taylor*.  *See Taylor*, 659 F.3d at 1232.  Thus, since Dr. Ryser's questionnaire results and evaluation report do not relate to the period at issue, the Appeals Council was correct to not consider the evidence.

### 4. The ALJ's Failure to Consider Plaintiff's Mental Impairments in Determining Plaintiff's Residual Functional Capacity Was A Harmless Error.

Plaintiff asserts the ALJ erred because she found Plaintiff has non-severe mental impairments at step two but did not consider those impairments in determining Plaintiff's residual functional capacity.  (Doc. 11 at 23).  Indeed, the ALJ did not discuss Plaintiff's non-severe mental impairments in her residual functional capacity finding.  (Doc. 7-3 at 28-33).  This was a harmless error that did not affect the ALJ's ultimate determination.

District courts have come out differently "when analyzing the issue of whether it was error for an ALJ to find a mild mental limitation but fail to craft a corresponding functional restriction for the RFC." *Sabrina M. C. v. Kijakazi*, No. 22-2187-KS, 2023 WL 8945707, at *5 (C.D. Cal. Nov. 20, 2023); *see also Hilda V. A. v. Kijakazi*, No. 22-cv-01064, 2023 WL 1107867, at *5 (C.D. Cal. Jan. 30, 2023) (collecting cases). The Ninth Circuit's decision in *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022), partially resolved this conflict. In *Woods*, the ALJ found that the claimant had "mild limitations" in two of the "paragraph B" criteria and "no limitations" in the other two. *Id*. at 794. The claimant faulted the ALJ for including no mental limitations in the RFC despite the mild, mental functioning limitations; however, the court ultimately affirmed the ALJ's determinations, indicating that mild, mental functional limitations do not require corresponding mental limitations in a claimant's RFC. *Id.*

In its reasoning, the *Woods* court wrote, "[t]he ALJ's assessment of her residual functional capacity expressly reflected these [mild, mental functioning] limitations" and further noted that the claimant did "not identify any particular evidence that the ALJ failed to consider or explain why the record does not support the ALJ's findings regarding her mental functions." *Id.*

Left unresolved is whether the ALJ is required to expressly address the limitations in making the RFC determination, or whether the ALJ need not always explain why the "paragraph B" findings of "mild" to "no limitations" do not impact the RFC. *See Hilda*, 2023 WL 1107867, *4 (finding no procedural error where the ALJ's only explanation for not including any functional restrictions in a claimant's RFC due to mild mental limitations was a boilerplate statement that the RFC "reflects the degree of limitation" found in the step two analysis); *but see Brengan v. Kijakazi*, No. 2:22-cv-02208, 2024 WL 626705, *7 (E.D. Cal. Feb. 14, 2024) (finding a harmful, procedural error where the ALJ concluded that the claimant had mild mental limitations at step two but, "without explanation," failed to include any such limitations in the RFC). In *Brengan*, the court distinguished its case from *Woods* by noting that, in *Woods*, the Ninth Circuit upheld the ALJ's RFC determinations where the ALJ's assessment "expressly reflected" the mental limitations.

2024 WL 626705, *7.  In its case, the ALJ failed to explain why the mild mental limitations did not impact the RFC, and the *Brengan* court determined the error was harmful because the mental limitations, properly considered, may have resulted in a "more restrictive residual functional capacity assessment, which may in turn alter the finding of non-disability." *Id*.

This Court reads *Woods* as requiring the ALJ to provide some explanation of why the mild, mental limitations do not impact a claimant's RFC, even if just a statement acknowledging that the step two mental limitations were taken into consideration.  Thus, here, the ALJ erred.  The ALJ made no mention of Plaintiff's non-severe mental impairments in her RFC determination, nor did she provide an explanation of why the mild functional limitations did not result in mental limitations in the RFC.  (Doc. 7-3 at 28-33).

Harmless error principles apply in the Social Security Act context.  *Molina*, 674 F.3d at 1115.  An error is harmless if substantial evidence remains to support the ALJ's decision, and the error does not affect the ALJ's ultimate determination.  *Id*.  Here, at step two, the ALJ thoroughly assessed Plaintiff's mental limitations and determined that evidence supports no more than a minimal limitation in Plaintiff's ability to do basic work activities.  While the ALJ did not state it, she determined that the mental impairments had no impact on the RFC.  (Doc. 7-3 at 28-33).  This is supported by substantial evidence, both outlined in the ALJ's opinion at step two and discussed above.  (Doc. 7-3 at 24-27).  As in *Woods*, Plaintiff fails to "identify any particular evidence that the ALJ failed to consider or explain why the record does not support the ALJ's finding regarding her mental functioning."  *See Woods*, 32 F.4th at 794.  Further, the claimant usually bears the burden of proving that an error is harmful.  *Molina*, 674 F.3d. at 1111.  While Plaintiff correctly asserts that the ALJ erred by not considering her mental impairments, she does not allege that this error was harmful, and thus fails to carry her burden on appeal.  (Doc. 11 at 23).

**B.**     **The ALJ Did Not Err in Weighing Medical Source Opinion Evidence Regarding Plaintiff's Physical Impairments.**

**1.**     **Legal Standard**

For claims filed on or after March 27, 2017, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ."   20 C.F.R. § 404.1520c(a) (2017).   In considering medical opinions or prior administrative medical findings, the ALJ will consider the following factors: supportability, consistency, relationship between provider and claimant, specialization, and other factors.  *Id.* § 40.1520c(a), (c).  When considering the relationship between the provider and the claimant, the ALJ considers the length, frequency, purpose, and extent of the treatment relationship.  *Id.* § 404.1520c(c)(3)(i)–(iv).  Additionally, the ALJ considers whether the provider of the medical opinion actually examined the claimant.   *Id.* § 404.1520c(c)(v).   Of these factors, supportability and consistency are the most important.  *Id.*  § 404.1520c(a), (b)(2).  The ALJ will articulate the persuasiveness of medical opinions in the case record.  *Id.* § 404.1520c(b).

**2.**     **The ALJ Did Not Err in Weighing NP Parrish's Medical Opinion Evidence.**

Here, the ALJ did not err in weighing the medical opinion evidence of Jeanne Parrish, FNP-C ("NP Parrish").   Plaintiff challenges the ALJ's weighing of the medical opinion of NP Parrish, co-signed by Caroline Kupfer, M.D, which concluded that Plaintiff is capable of "far less than sedentary exertion, including sitting, standing, and walking an hour or less each in an eight-hour day."  (Doc. 7-3 at 32).  The record indicates that the ALJ did consider her opinion but found it unpersuasive due to both lack of support and inconsistency with the medical record.  (*Id.* at 32-33).  Substantial evidence supports this conclusion.  *See Orn*, 495 F.3d at 630.

For example, the ALJ pointed to several examinations over the course of three years that indicate Plaintiff's activities have not "been as extremely curtailed . . . or that the severity of her medical conditions warrants additional functional limitations to include, for example, lying down during the day."  (Doc. 7-3 at 30).  During a November 2019 exam

during, NP Parrish wrote that Plaintiff was "[o]verall doing well," that Plaintiff reported increased "mid/low back pain," but that Plaintiff described the pain as "stiff, especially in the morning" and that the pain improved with movement and was alleviated with Motrin. (Doc. 7-3 at 29; Doc. 7-10 at 130).   The ALJ also noted Plaintiff's three follow-up appointments with Dr. Al-Badri, a physician with Dignity Health Medical Group and an associate of NP Parrish, in December 2019, June 2020, and August 2020.  (Doc 7-3 at 29). In December 2019, while Plaintiff stated that she walks but only for a short period of time, she also reported that she only takes ibuprofen 2-3 times per month, does back exercises at home, and that physical therapy had helped in the past.  (Doc. 7-3 at 29; Doc. 7-10 at 110). During Plaintiff's June 2020 exam with Dr. Al-Badri, Plaintiff did not report any chronic back pain or pain associated with osteoporosis.   (Doc. 7-10 at 78).   Finally, during Plaintiff's August 2020 exam with Dr. Al-Badri, Plaintiff made no mention of chronic back pain and got a new Prolia prescription for her osteoporosis.  (*Id.* at 74).  As the ALJ accurately noted, there is no indication in the record that Plaintiff's injections of Prolia were not effective in treating her osteoporosis.  (Doc. 7-3 at 31).  Further, the ALJ noted that Plaintiff first reported a change to her symptoms in March 2021, stating that Tylenol was no longer helping her pain; however, Plaintiff did not arrange the recommended X-rays to identify a potential osteoporosis-related break, and medical records from her April 2021 appointment with Dr. Al-Badri make no mention of back pain.  (Doc. 7-3 at 29; Doc. 8-1 at 43-44).  This evidence supports the ALJ's conclusion that NP Parrish's opinion was unpersuasive. *See Orn*, 495 F.3d at 630 ("Substantial evidence is more than a mere scintilla but less than a preponderance.").

In her assessment of Plaintiff's limitations, NP Parrish based her findings on Plaintiff's "history of degenerative disc disease, cervical radiculopathy, depression, retinal vein occlusion, hypotension, osteoporosis, myocardial infarction, and cardiomyopathy." (Doc. 7-3 at 32; Doc. 7-8 at 284).  Plaintiff points to underlying treatment records, such as "x-rays [that] revealed multilevel degenerative disc disease," to suggest NP Parrish's opinions were consistent with the record.  (Doc. 11 at 25).  However, as the ALJ wrote, "the fact of these diagnoses does not adequately support the[] extreme limitations."  (*Id.*).

In fact, a review of the actual treatment record Plaintiff cites to—an internal medicine appointment with NP Parris from January 2019—reveals that Plaintiff reported her low back pain and neck pain was improved and that, while she experienced exacerbated pain after prolonged standing in one spot, it was alleviated with rest, Ibuprofen, Tylenol, and topical compound cream.  (Doc. 7-8 at 116).  Even if evidence is "susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  The ALJ rationally interpreted and relied on substantial evidence in weighing NP Parrish's medical source opinion, and thus did not err.

### 3.     The ALJ Did Not Err in Weighing Opinions from Non-Examining State Agency Medical Consultants.

Plaintiff next alleges that the ALJ erred in relying on opinions from non-examining state agency medical consultants because the ALJ "failed to take into account [] where the consultants reviewed a limited record."  (Doc. 11 at 26).  The ALJ did not err.  As Plaintiff explained in her own appeal, the "Commissioner's regulations emphasize that evidence submitted after state agency medical consultants render opinions might make those opinions 'more or less persuasive.'"  (Doc. 11 at 27) (quoting 20 C.F.R. § 416.920c(c)(5)).  Here, the ALJ did just that.  She reviewed the underlying findings (Doc. 7-4 at 21-40), the findings on reconsideration (*Id.* at 42-68), and then considered those findings in light of the "expanding, hearing-level evidence," concluding that the additional evidence "does not demonstrate any particular change or worsening of her conditions that might be inconsistent with these findings."  (Doc 7-3 at 31-32).  In further adherence with the regulations, the ALJ assessed the supportability of the opinions, finding both consultants' opinions were "supported with citation to the record."  (*Id.* at 32).  And, where the consultants differed with regard to Plaintiff's "reaching limitations," the ALJ properly reviewed the medical records cited by the consultants and decided that, "[t]hough her surgery and th[e] imaging [the initial consultant emphasized] is more remote, the undersigned affords the claimant these limitations . . . in order to avoid undue exacerbation."  (*Id.*).  Thus, the ALJ did not err.

**C.    The ALJ Provided Clear and Convincing Reasons for Discrediting Plaintiff's Symptom Testimony.**

If a claimant's statements about pain or other symptoms are not substantiated by objective medical evidence, the ALJ must consider all of the evidence in the case record, including any statement by the claimant and other persons, concerning the claimant's symptoms.  SSR 16-3p, 2016 WL 1119029, at *4 (March 16, 2016), *amended by* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) [*hereinafter* SSR 16-3p].  Then, the ALJ must make a finding on the intensity, persistence, and limiting effects of claimant's symptoms. *Id.*

In evaluating the intensity, persistence, and limiting effects of a Claimant's symptoms, the ALJ will consider a set of seven factors, in addition to all the existing evidence:

1.    Daily activities;

2.    The location, duration, frequency, and intensity of pain or other symptoms;

3.    Factors that precipitate and aggravate the symptoms;

4.    The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5.    Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6.    Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.    Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7-8.  The ALJ will discuss only those factors made relevant by the evidence.  *Id.* at *8.  A claimant's statements about her own symptoms will factor into this analysis based

on their consistency with the record: statements consistent with the record indicate Claimant's symptoms are more likely to reduce capacity to perform work-related activities, while inconsistent statements indicate the opposite. *Id.* The Court reviews the ALJ's rejection of Plaintiff's testimony for "specific, clear and convincing reasons." *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." However, the ALJ next found that "Plaintiff's and her sister's third-party statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Doc. 7-3 at 30). Plaintiff alleges the ALJ erred in this determination because the ALJ: (1) erroneously "rested her entire evaluation of [Plaintiff's] allegations regarding her psychiatric impairments on a boilerplate conclusion that there was insufficient evidence to support her allegations;" (2) erroneously rejected Plaintiff's physical impairments because treatment notes did not substantiate her impairments; and (3) "failed to provide support for her conclusion that [Plaintiff's] treatment controls her pain symptoms." (Doc. 11 at 28-30). The ALJ did not err and, instead, provided clear and convincing reasons for discrediting Plaintiff's symptom testimony.

First, the ALJ explained that Plaintiff's symptom testimony was inconsistent with objective medical evidence. (Doc. 7-3 at 30). Plaintiff alleged she was unable to sit or stand for more than 30 minutes (Doc. 7-7 at 44), but as the ALJ noted, and as discussed above, "the treatment record reflects very little concern" that prescribed medications, at-home therapy exercises, and pain management regimen of ibuprofen and Tylenol were inadequately controlling Plaintiff's reported chronic pain. (Doc. 7-3 at 30-31). Additionally, the ALJ identified physical examinations that appeared "largely unremarkable," such as imaging of the thoracic and lumbar spines. (*Id.* at 31). The ALJ acknowledged Plaintiff's osteoporosis but noted that Plaintiff receives injections of Prolia, and there is no indication they are not effective. (*Id.*). Further, the ALJ considered Plaintiff's reported "capacity to prepare meals, drive, shop, and take care of her three dogs"

and taking all this together, concluded "[t]he overall evidence does not indicate the [Plaintiff's] activities have been as extremely curtailed as she described." (Doc. 7-3 at 30).

Plaintiff is correct that the ALJ did not sufficiently address Plaintiff's mental impairments in relation to the ALJ's RFC determination. However, as addressed above, the error is harmless—substantial evidence supports the ALJ's finding that Plaintiff has no more than a minimal mental limitation in her ability to do basic work activities. (Doc. 7-3 at 24-27). As such, the ALJ reasonably found Plaintiff's subjective allegations unpersuasive. (Doc. 7-3 at 24-27); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). Plaintiff wrongly alleges that "the ALJ erred by requiring treatment notes record specific areas of physical functioning to substantiate a limitation" and mistakenly implies the ALJ solely rejected Plaintiff's statement because the treatment notes did not specifically address physical functioning. (Doc. 11 at 29). In fact, the ALJ considered Plaintiff's "ongoing normal physical examinations . . . along with no recommendations, increases, referrals, or changes to her treatment regimen" in discounting Plaintiff's symptom testimony. (Doc. 7-3 at 29). And finally, the ALJ provided clear and convincing evidence to support her finding that Plaintiff's pain testimony should be discounted, given the dearth of medical evidence suggesting treatments were not effective and limited reports of pain outside her hearing testimony. (Doc. 7-3 at 29).

Based on the overall record, including Plaintiff's physical examinations, objective medical evidence, improvement with medications and other conservative treatments, and Plaintiff's own testimony about her daily activities, the ALJ provided clear and convincing reasons for discrediting Plaintiff's symptom testimony. Therefore, the Court affirms the ALJ's decision.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and terminate this case.

Dated this 25th day of October, 2024.

G. Murray Snow
Senior United States District Judge